IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES MOSLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-484 |
| | § | |
| JOHN E. POTTER, | § | |
| POSTMASTER GENERAL | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Defendant John E. Potter's Motion for Summary Judgment (Document No. 22). After carefully considering the motion and the applicable law, the Court concludes as follows.

I. Background

This is an employment dispute. Charles Mosley ("Plaintiff") works for the United States Postal Service ("USPS") as a Mail Processing Clerk at the North Houston Processing Center. Plaintiff's left shoulder was injured over thirty years ago during a tour in the military. Plaintiff had reconstructive surgery on his shoulder in 1974, and another surgery in 1999 to repair his rotator cuff.[1] As a result of this injury, Plaintiff is classified as a 10-point preference veteran because the Veterans

---

[1] Document No. 23, ex. 4 at page 14 of 20.

Administration has declared him to be a permanently disabled service-connected veteran.

On December 2, 2007, Plaintiff's newly-assigned supervisor, Arnell Garrett, ordered him to process mail on the Delivery Bar Code Sorter ("DBCS machine").[2] Plaintiff refused, stating that the last time he worked on the DBCS machine he aggravated his shoulder.[3]  Plaintiff also stated that "he was on light duty because of his condition and working on the DBCS [machine] violated his restrictions."[4]  Garrett reviewed Plaintiff's file, which "revealed he had no current light duty request on file," and Plaintiff's medical records "indicated he returned to regular duty on March 12, 2003."[5] Garrett gave Plaintiff the necessary forms to apply for light duty status, which included a "Duty Station Report" for a physician to complete.[6]  Because Plaintiff would not work the DBCS machine, Garrett placed Plaintiff on "off duty status" and told him "to get off the clock."[7]

On January 2, 2007, Plaintiff was released to work by the USPS Medical Unit with the restriction for "no repetitive work above

---

[2] Id., ex. 5 at page 12 of 17.

[3] Id., ex. 4 at page 13 of 20, ex. 5 at page 12 of 17.

[4] Id., ex. 5 at page 12 of 17.

[5] Id., ex. 5 page 12 of 17.

[6] Id., ex. 5 at page 12-13 of 17.

[7] Id., ex. 4 at page 13 of 20; id., ex. 5 at page 13 of 17.

shoulder level."[8] Three days later, Plaintiff completed a Light Duty Request Form, requesting to go on light duty from January 3, 2007 to February 5, 2007, and stating his limitation as follows: "no repetitive work above shoulder level. I request reasonable accommodation."[9] Plaintiff's request for temporary light duty was approved.[10]

On February 9, 2007, Plaintiff was released to work by the USPS Medical Unit with the restriction for "no repetitive work at chest level."[11] The next day, Plaintiff submitted a Light Duty Request Form, requesting to go on light duty from February 10, 2007 to March 10, 2007.[12] Plaintiff's request for temporary light duty was approved.[13]

On March 13, 2007, Garrett completed a "Reasonable Accommodation Committee Nomination" on behalf of Plaintiff and submitted it to the District Reasonable Accommodation Committee ("DRAC").[14] The DRAC is the administrative committee that assesses whether a disabled employee is eligible for a permanent

---

[8] <u>Id.</u>, ex. 8.

[9] <u>Id.</u>, ex. 9.

[10] <u>Id.</u>, ex. 2 at page 10 of 20.

[11] <u>Id.</u>, ex. 10.

[12] <u>Id.</u>, ex. 11.

[13] <u>Id.</u>, ex. 12.

[14] <u>Id.</u>, ex. 14.

accommodation. On the nomination, Garrett provided the facts as stated above and added:

> I am requesting a Fitness for [D]uty Examination on this employee . . . to determine whether the employee meets the mandatory medical requirements of the positions held or is able to perform the duties of that position. Processing mail on the DBCS in his job on Tour Two.[15]

Garrett sent Plaintiff a letter dated March 30, 2007:

> A review of your file reveals a lack of medical documentation to support your continued need for light duty. The last medical documentation received in this office was dated 2/10/07 and your request for light duty was approved for 2/10/07 through 3/10/07. **Light duty assignment must be updated every 30 days with supporting medical documentation.** The medical documentation you provided must place the limitations on the duties you may perform. (See attached duty status report).
>
> Failure to submit the required information may result in disapprovals of future light duty requests. In addition, you will be expected to perform the duties of your position.[16]

Plaintiff did not submit any additional information or requests to extend his temporary light duty status while his request for a reasonable accommodation was pending before the DRAC.[17] By letter dated March 30, 2007, Garrett reiterated to Plaintiff that he needed to provide additional information to renew his temporary

---

[15] Id., ex. 14 at 3.

[16] Id., ex. 12 (emphasis in original).

[17] Id., ex. 13.

4

light duty status.[18]  On June 2, 2007, Garrett reminded Plaintiff that he had failed to submit the necessary forms to maintain his temporary light duty status, and that he would have to work on the DBCS machine--as his tour required--or "get off the clock."[19]

Plaintiff filed an administrative Equal Employment Opportunity complaint ("EEO Complaint") on April 28, 2007, based on Garrett's conduct.[20]  He supplemented that complaint with affidavits signed June 24, 2007,[21] and August 10, 2007.[22]  In his EEO Complaint, Plaintiff asserted claims of disability discrimination, harassment, and retaliation.  On November 13, 2007, the EEO Services Analysis issued a Final Agency Decision, finding that all of Plaintiff's claims lacked merit.[23]  On February 11, 2008, Plaintiff filed this suit--based on the EEO Complaint of April 28, 2007--asserting only a claim for disability discrimination.[24]  Defendant moves for summary judgment denying that claim.

---

[18] Id., ex. 13.

[19] Id., ex. 4 at page 14 of 20.

[20] Id., ex. 2 at page 1 of 20.

[21] Id., ex. 4 at page 13 of 20.

[22] Id., ex. 4 at page 3 of 20.

[23] Id., ex. 3.

[24] See Document No. 1.  At the Scheduling Conference on October 24, 2008, Plaintiff stated his claim was for disability discrimination.

## II. Discussion

A. Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the

nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 106 S. Ct. at 2552. If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted. <u>Id.</u>

B. <u>Rehabilitation Act Standard</u>

Plaintiff's disability discrimination claim is analyzed under the burden-shifting framework from <u>McDonnell Douglas Corp. v.</u>

Green, 93 S. Ct. 1817 (1973).[25] Under this framework, the plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case. "After making this *prima facie* showing, the 'burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.'" Milton, 256 F. App'x at 655 (quoting McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 280 (5th Cir. 2000)). If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination. Id. Here, the Court does not reach the second or third step of the framework because Plaintiff has not established a *prima facie* case of disability discrimination.

---

[25] Plaintiff purportedly brings this suit under the Americans with Disabilities Act ("ADA"). *See* Document No. 1 at 1. The federal government is not subject to the ADA and therefore, disability discrimination claims against the USPS must be brought under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796. *See* Henrickson v. Potter, 327 F.3d 444, 447 (5th Cir. 2003) (no claim is permitted under ADA against the USPS). This doctrinal distinction does not affect Plaintiff's claim because, "discrimination claims brought under the Rehabilitation Act are governed by the same standards as claims brought under Title I of the Americans with Disabilities Act of 1990." McKay v. Johanns, 265 F. App'x 267, 268 (5th Cir. 2008) (citing 29 U.S.C. § 794(d)); *see also* Milton v. Nicholson, 256 F. App'x 655, 657 (5th Cir. 2007) (applying the McDonnell Douglas standard to the plaintiff's disability discrimination claim under the Rehabilitation Act).

C. <u>Analysis</u>

To establish a *prima facie* case of discrimination under the Rehabilitation Act, Plaintiff must show that (1) he has a disability; (2) he is an individual qualified for the job in question; (3) he worked for a program or activity receiving Federal financial assistance; and (4) an adverse employment decision was made solely because of his disability. <u>McKay</u>, 265 F. App'x. at 268; <u>Carter v. Ridge</u>, 255 F. App'x 826, 829 (5th Cir. 2007). A person is disabled if he either (1) actually is disabled, (2) has a record of being disabled, or (3) is regarded as being disabled. 29 U.S.C. § 705(9)(B); *see also* <u>Arredondo v. Gulf Bend Center</u>, 252 F. App'x 627, 630 (5th Cir. 2007). Here, Plaintiff has failed to raise so much as a genuine issue of material fact that he is disabled under any of the foregoing tests.

1. <u>Actual Disability</u>

Actual disability is a mental or physical impairment that substantially limits an individual's ability to perform at least one major life activity. 29 C.F.R. § 1630.2(g)(1). "Major life activities" include such functions as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). "Substantially limits" means either the inability to perform a major life activity or a severe restriction on the ability to

perform a major life activity as compared to the general population. 29 C.F.R. § 1630.2(j)(1). The major life activity at issue in this case is working. A disability does not substantially limit a person's ability to work unless he is precluded "from a class of jobs or a broad range of jobs." <u>Dupre v. Charter Behavioral Health Sys.</u>, 242 F.3d 610, 614 (5th Cir. 2001).

The evidence regarding Plaintiff's shoulder limitation is that (1) he has difficulty making repetitive movements at or above shoulder level and therefore feels unable to work the DBCS machine; and (2) he is classified as a 10-point preference veteran because the Veterans Administration has declared him to be a permanently disabled service-connected veteran. This evidence fails to create a genuine issue of material fact that his shoulder injury substantially limits any major life activity. First, "[t]he inability to perform a single, particular job does not constitute a substantial limitation on the major life activity of working." 29 U.S.C. § 1630.2(j)(3)(I). According to Plaintiff's affidavit testimony, he is able to work various other machines at the post office and he is able to work overtime.[26] Second, Plaintiff's

---

[26] Document No. 23, ex. 4 at page 14 of 20; *see also* <u>Moreno v. Brownlee</u>, 85 F. App'x 23, 27-28 (5th Cir. 2004) (employee failed to establish *prima facie* case of disability discrimination where evidence showed his carpal tunnel syndrome had simply precluded him from performing one particular job, which was "not enough to constitute a substantial limitation in the major life activity of working"); <u>Price v. Marathon Cheese Corp.</u>, 119 F.3d 330, 336 (5th Cir. 1997) (affirming district court's finding as a matter of law that the plaintiff did not establish a substantial limitation on

reliance on his disability classification from the Veterans Administration is misplaced. Veterans Administration ratings attempt to quantify a decrease in a veteran's earning capacity. Burkhart v. Intuit, Inc., No. CV-07-675, 2009 WL 528603, at *15 (D. Ariz. Mar. 2, 2009) (citing Thorn v. BAE Sys. Haw. Shipyards, Inc., 586 F. Supp. 2d 1213, 1221 (D. Haw. 2008)). The ratings "represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." Thorn, 586 F. Supp. 2d at 1221 (quoting 38 C.F.R. § 4.1). The Veterans Administration ratings, therefore, are assessed pursuant to a standard entirely different from that imposed by the Rehabilitation Act (which incorporates the ADA standards), and are therefore insufficient to create a genuine issue of fact that Plaintiff is disabled under the Rehabilitation Act.[27]

---

working because the plaintiff testified that she was capable of doing other jobs for her employer and she had worked overtime preceding her discharge); McKay v. Toyota Motor Manuf., USA, Inc., 110 F.3d 369, 371-74 (6th Cir. 1997) (affirming district court's finding as a matter of law that the plaintiff was not disabled under that ADA from carpal tunnel syndrome because "at best, her evidence supports a conclusion that her impairment disqualifies her from only the narrow range of assembly line manufacturing jobs that require repetitive motion or frequent lifting of more than ten pounds. It follows that her limited impairment would not significantly restrict her ability to perform a broad range of jobs in various classes.").

[27] DiCarlo v. Potter, 358 F.3d 408, 418-19 (6th Cir. 2004) (holding that the Veterans Administrations's determination that the plaintiff had a 20% leg disability "is insufficient to demonstrate that DiCarlo is substantially limited in a major life activity");

2. <u>Record of Impairment and Being Regarded as Having an Impairment</u>

To have a record of impairment, Plaintiff must either have "a history of" an impairment that substantially limits one or more major life activities or he must have "been misclassified as having" the same. 29 C.F.R. § 1630.2(k). Here, Plaintiff has failed to show his shoulder injury has substantially impaired a major life activity. While the evidence indicates a history of shoulder problems, it fails to create a genuine issue of material fact that Plaintiff is disabled under the Rehabilitation Act.

To be "regarded as disabled," Plaintiff must show that he either (1) "[h]as a physical or mental impairment that does not

---

<u>Faulkner v. ATC Vancom Ltd. P'shp.</u>, 203 F.3d 830, 1999 WL 1091872, at *2-4 (9th Cir. Dec. 2, 1999) (unpublished opinion) (finding evidence consisting of (1) a 40% VA disability rating, (2) a doctor's note warning that the plaintiff should avoid "prolonged flexion of the knee to prevent aggravation of this old injury," and (3) the plaintiff's testimony regarding "loss of mobility, severe limitations, and extreme pain" in his knee were insufficient to create a fact issue regarding whether the plaintiff was substantially limited in a major life activity); <u>Burkhart</u>, 2009 WL 528603, at *15 (finding that while the Veterans Administration records demonstrate that the plaintiff "has a history of suffering from PTSD, an impairment, Plaintiff has not demonstrated that the impairment substantially limits any major life activity."); <u>Emerick v. Norfolk S. Ry. Co.</u>, No. CIVA 3:03-266, 2006 WL 3692595, at *6-8 (W.D. Pa. Dec. 12, 2006) (finding that (1) medical documents showing the plaintiff is being treated for a variety of back and shoulder problems, (2) the plaintiff's testimony that he is in constant pain, and (3) the plaintiff's classification as 40% disabled by the Veterans Administration, failed to establish a genuine issue of fact that the plaintiff was disabled because such evidence did not "demonstrate the practical implications of his impairment and how those implications obstruct a major life activity.").

substantially limit major life activities but is treated by a covered entity as constituting such limitation," (2) "[h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment," or (3) "is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l). There is no evidence that anyone employed by the USPS regarded Plaintiff as disabled under any of these tests. Accordingly, Plaintiff has failed to establish a *prima facie* case of disability discrimination and Defendant is entitled to summary judgment on Plaintiff's claim.

### III. Order

It is therefore

ORDERED that Defendant John E. Potter's Motion for Summary Judgment (Document No. 22) is GRANTED.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 2nd day of November, 2009.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

13